United States Courts
Southern District of Texas
F I L E D

MAY 17 2021

Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

Walter Moore

(Plaintiff(s)

§

§
Versus                                          §      CIVIL ACTION NO:

§
§

§      **21cv1679**

Greater Houston Transportation Company and      §

Metropolitan Transit Authority of Harris County

Texas.

(Defendant(s)

## EMPLOYMENT DISCRIMINATION COMPLAINT

The plaintiff, Walter Moore, now comes and respectfully present his complaint to the Honorable Justice of the United State District Court for the Southern District of Texas; Houston Division, and against the defendant(s) Greater Houston Transportation Company and Metropolitan Transit Authority of Harris County Texas, as Texas Taxi, Inc. Hereinafter, the company, defendant, or respondent; and

against Texas Mutual Insurance Company, hereinafter the insurer or Insurance Company, and states and alleges as follows.

## Cause

**Employment Discrimination based on national origin of the plaintiff, that resulted in personal injuries, preceded by misclassification of Plaintiff's employee status.**

The word 'company,' when used in this context or in this case to refer to the defendant(s), will mean Greater Houston Transportation Company and their partner, Metropolitan Transit Authority of Harris County Texas answering as Texas Taxi, Inc; their administrator(s), executive(s), owner(s) or employees both present and in the past. The style of this action is Moore vs. Greater Houston Transportation CO, et al.

### Discrimination Based on National Origin

Defendant(s) discriminated against the plaintiff based on his national origin when they.

1) effectively targeting and terminated his employment.

2) on or around April 17th, 2016 and again in January of 2021, assaulted/tortured the plaintiff, to force him to quit his job.

3) denied the plaintiff access to employee benefit and insurance coverage.

4) on June 29th, 2018, contributed to plaintiff's injury again in a traffic accident.

5) Wrongly classified the plaintiff as an independent contractor.

## Authority

This action is brought under Title VII of the Civil Rights Act of 1964 for employment discrimination and supplemented by Texas and Federal Fair Labor Standards.

## Jurisdiction

1) Jurisdiction is conferred by Title 42 United States Code, Section § 2000e-5.

2) The plaintiff is a Texas resident, domicile in Harris County Texas.

3) The Company is a Public Private Corporation located in Harris County Texas.

4) The complaint alleged in this action occurred in Harris county Texas.

## Request to Consolidate Cases

The plaintiff would like to request leave of the court to consolidate the cases as one that started on or around April 17th of 2016th through January of 2021, because the plaintiff is also alleging that a traffic accident that occurred on June 29th, 2018, and a second injury in January of 2021, were not separate incidents but part of the same effort to relieve him of his employment, and the same continuous effort throughout this entire period; subjecting the plaintiff(s) to continuous trauma designed with the end goal, termination of his employment.

## Background

The issue started around February of 2016 when; as a Metro Lift driver for the company(s), the plaintiff was hired to service a specific route of passengers between the hours of 5AM and 5PM. The amount of work we had to do increased by volume and as a result, the company was offered a new contract with pay increase and longer term to be extended after three years.

The defendant then tried to replace the plaintiff with a young female who was an American citizen for no apparent reason, except for the obvious. The company then used gestures and proxies following that and various intimidation tactics, to communicate to the plaintiff what their intentions were. This escalated to harassment that included the assault and physical injury of the plaintiff and relentless stalking.

### Notice of Right to Sue

The plaintiff complained to the Equal Employment Opportunity Commission on or around September 29th, 2019. The Letter of Right to Sue is forthcoming. In 2019 though, the EEOC stated that because the plaintiff was made to pay for the vehicle, he would be classified as an independent contractor under the Equal Employment Opportunity Commission guidelines. So, the claimant decided to wait for this question to be answered at Texas Division of Workers Compensation, before continuing to file the charges.

### Expansion of time

The plaintiff would like to request an expansion of time for any period that may be required to be allowed to fully prosecute his case in the interest of justice and the public good. Since some of the issues complained of herein, like misclassification, may affect up to, or above three hundred of the defendant(s)' current and former employees, and maybe continuing.

### To terminate the plaintiff's employment,

### the defendant(s) is alleged to have done the following.

a) Put the plaintiff on three months suspension; claiming that he was seen sleeping at the wheel. This happened after he has been complaining to the employer for several weeks how the vehicle had been leaking fuel that was making him drowsy, but they failed to repair it. He went from getting $38 an hour to basically getting less than half that, and on some occasion as low as zero or negative dollars for a day's work, after gas purchase.

b) He lost his apartment and started living out of his vehicle, as a direct result.

c) After the three months of suspension was ended, the plaintiff went back to the manager to ask for his job and was sent to a person understood to be a Metro Representative at the company to be reinstated, but was told by her, not right now. She also told him; you do not have to call us, we will call you in about a year's time, but she never did.

d) The company is in a Public Private Partnership with Metropolitan Transit Authority of Harris County Texas, dba Texas Taxi, Inc., and this happened on the public side. He was then allowed to work on the private side for much less pay; when in about a year's time came, on June 29th, 2018, he was rear ended on FM1960, and his vehicle totaled.

e) After the accident, the plaintiff was unable to work for a while and filed for Workers Compensation, but the defendant challenged the claim, saying that the plaintiff was not an employee and not entitled to benefit, which the claimant disputed.

f) While this claim was pending on the private side of the company; the plaintiff was still working on that side, but had been told not to file, because

he was not an employee. Then in January of 2021 he was physically assaulted in the car, after he went against their instruction and filed for benefit anyways. This happened for the second time. The first was on or around April 17th, 2016, but it did not occur to the plaintiff that the assault and injuries at that time were job related, because he only realized he was hurt when he got home and went to lie down. Now, both attacks were identical, and happened in the same manner and time frame. So, the second time he was able to sum it up as the modus aperandi of the company, and a part of the initiative to have him replaced on his job.

g) After realizing this, the plaintiff went and filed for Workers Compensation on the first case that occurred on or about April 17th, 2016, on the public side of the company, and the company made the same argument, plus also saying that it was untimely, but the plaintiff disagrees, since he was not aware that the injury was job related at the time. The plaintiff also filed a complaint with EEOC, but he was told that because they charge him a fee to use the vehicles, that would indicate that he was a contract worker based on EEOC guidelines. The claimant then decided to wait for the Division of Workers Compensation to answer the question of employment status before filing EEOC charges.

h) This bring us to January 19th of 2021, when the Administrative Law Judge found that; 1) the plaintiff was in fact an employee of the company on or around April 17Th 2016 2) He was not an employee when the accident occurred on June 29th, 2018. 3) He sustained compensable injuries in the

accident of June 29th, 2018. 4) And on appeal, that the company was properly and timely notified, of the accident and of the plaintiff's injuries.

### Decision of the Administrative Law Judge

The administrative Law Judge decided that the plaintiff was not entitled to compensation for the accident, because he was not an employee of the company on June 29th, 2018, even though the judge found that he was an employee on April 17th, 2016, but the plaintiff disagrees, with regards to his job status on June 29th 2018, because he was not fired from his job nor rehired with different terms, but simple reassigned to a different possession in the company, and his employment status did not automatically change.

If that is the case; then, when a Police officer shoots someone and gets reassigned to desk duties, he or she would have automatically become independent contractors, and we all know that is not the case.

The Administrative Law Judge also decided, among other reason, that the plaintiff was not entitled to workers compensation in the April 17th 2016th incident, because of lock of medical evidence. Defendant submitted some evidence, but the insurer had previously contacted the doctor and cancelled diagnostic appointments, stating that they would not authorize nor pay for them, after initial authorization.

The claimant pointed out to the ALJ that the insurers' challenge to this claim is untimely and therefore, barred by statutes with penalty attached, which the plaintiff has claimed and is requesting be awarded

against the insurer for this act of denying the plaintiff access to medical care.

## Request for Judicial Review

**Plaintiff is therefore, requesting that as a part of these proceedings, the Court appends for review, the entire record, on claim** for compensation at Texas Division of Workers Compensation for error by the Administrative Law Judge, affirm the finding that he was an employee of Greater Houston Transportation Company and Metropolitan Transit Authority of Harris County Texas on or around April 17Th 2016, and the Appeals Panel finding that he did properly and timely notified the employer of his injuries sustained in the accident of June 29th, 2018, and decide the question of whether the plaintiff was also an employee by the same company at that time, while on suspension waiting to be reinstated and entitle to employee benefits. The plaintiff is here, requesting that both his request for Judicial review and civil action be allowed to continue together as one case, to help avoid financial constraint and economic hardship or restrict the plaintiff ability to proceed.

## Employer Discrimination Continues

**The defendant discriminated against the plaintiff(s) because he is not a US Citizen;** when on or around January of 2016, all was fine with the way he was working, and the company was awarded with a new contract by Metro with increased pay and longer term, three to five years, and they mounted an offensive to replace the plaintiff with a young lady who was a US Citizen. The company has indicated that the pay increase that Metro offered was too much for an immigrant, is what was communicated to the plaintiff. Which was why they wanted to replace him with a US Citizen.

**The defendant is a METRO contractor, and the plaintiff was a Metro Lyft driver.** The employer did not want the claimant to work on the new contract, because it was significantly more money and longer term. It seems they only wanted women who are friends and who are US Citizens.

The employer did not say this to the plaintiff(s) face, but used gestures and proxies, for obvious reasons, to communicate it in no uncertain terms. After about four to five weeks on this new contract; the message was loud and clear, they wanted plaintiff out of there, and was ready to even start using threats and violence.

**First, they started by having the company's mechanic vandalize the vehicle,** and because he was misclassified as a contractor, he was responsible to pay them for repairs. One of their favorites is to loosen up the front end so that as the claimant is driving it feels like it is going to fall off. When the plaintiff(s) called to let them know that the vehicle was dangerous and he could get into an accident; it would appear as though, well, that was the whole point.

**Claimant found out the company was behind the breaking in and vandalizing** of the vehicle, because on one occasion the mechanic forgot his bunch of about thirty keys in the back seat, after he broke into the car parked in the parking lot of the plaintiff's apartment complex while he was inside the apartment sleeping. He had seemingly followed the plaintiff home from work.

**Shortly after we received the new contract; there was a push to force the plaintiff out,** because they seem to prefer females who are American citizens and if male, Hispanics. The defendant has two group of employees one group is called employees and the other, independent contractors, yet we both do the same things. It

seems the employees' group is made up of mostly female American citizens, while the Independent Contractor Group is made up of mostly foreign nationals like the plaintiff.

### Plaintiff Attacked by Defendant with Robo-calls

Just about the same time that we were awarded the new contract. The claimant started getting an enormous amount of Robo-calls. He changed his number multiple times, but as soon as he changed it, the Robo-calls would start again within minutes and he could not understand how this was happening.

**How the Plaintiff discovered he was targeted by the defendant with Robo-calls.** The calls were so much, twenty-four hours a day, that the plaintiff(s) kept the phone turned off most of the time. These calls were so prevalent that there might have been two hundred or more in just one day. After having the ringer turned down and unable to use the phone for an extended period, the claimant decided one day that he was going to answer the phone. He had asked them several times before to stop calling him. Sometimes they would answer the phone, but most of the time they would stay silent and then hung up after the plaintiff(s) answered.

**This time, the plaintiff answered his own phone out of shared frustration,** after being unable to use it for three weeks or so, and it was not with a usual hello how can I help you, but he basically let the unknown caller 'have it. He let them know how he felt about them harassing him like that. Nobody answered but the claimant believes that they heard him. After that about three hours went by and there was a pause in the calls. The next call the claimant got was from the defendant, and they wanted him to come to the office because they had a complaint that he cursed at another employee.

**It took a while before the claimant could put things together**, because it was still early in the morning and he had not spoken to anyone at the company since he started out today, as far as he knows, but the head of security repeated a part of what the person said the plaintiff told them.

Plaintiff tried to explain how he was frustrated because they had been harassing him with silent calls and he was trying to get them to stop, He did not know who they were. Then the president of the company asked what number they were calling from. The plaintiff showed her the number and how he had labelled it so that he would know when they are calling not to answer, and she said that is our number, but the claimant thought he had all the company's numbers, even her cellphone number, and he did not recognize that number. She said that number is out of our dispatch office in Columbia.

**So, they had secretly outsourced the dispatched service**, and were running these Robo-calls from outside the legal jurisdiction of the United States. So, somebody at the company who was trying to force the claimant out of his job, for the reason stated in the cause of action, was employing this other strategy, and they were not done yet. This was happening from the other side of the company.

**They were just getting started and will not stop there**, because this would ultimately end in the physical assault and injury of the plaintiff(s), as outlined in the Plaintiff's claim for Workers Compensation; DWC#: 19250415-HE, and possible contributed to the rear-ending of his vehicle on June 29Th, 2018; DWC#: 19236200-HE. This also explains how the Robo-calls were continuing

every time that the claimant changed his number, because he had to call and give the company his new number but had no clue that they were doing that with it.

**Request for Judicial Review Continues**

**This action continues from a claim for compensation** filed with Texas Division of Workers Compensation, in part, to answer the question of whether the plaintiff was an employee on June 29th of 2018 and entitled to employee benefits and workers compensation when he was waiting to be re-instated to his regular assignments, and a traffic accident happened. The plaintiff attributed the accident to a continuation of the same incident of April 17th, 2016 and was intended to prevent him from being reinstated to his job.

**The Division of Workers Compensation, on January 19th, 2021** found that the plaintiff was not an employee June 29Th 2018, even though an employee on April 17Th 2016. However, on June 29th, 2018, everything remained the same as they were on April 17Th 2016; except the amount of money the plaintiff was getting; the vehicle he was driving, and which passenger he could pick up, none of which are deciding factors in whether the plaintiff was an employee or independent contractor. The company still had full control of up to about 90% of everything he does and had full control of his actions regarding the business.

**Texas Department of Workers Compensation on January 19th, 2021** also found that the plaintiff was an employee of Texas Taxi, Inc on April 17th, 2016. The plaintiff disagrees with the findings of the Administrative Law Judge on this subject, to the extent that she named the employer as Texas Taxi, Inc; because, the name of his employer was not Texas Taxi, Inc., but Greater Houston

Transportation Company, and Metropolitan Transit Authority of Harris County Texas. The plaintiff has worked for Greater Houston Transportation Company for a verry long time, but met Texas Taxi, Inc for the first time, only at the Workers Compensation Contested Case Hearing. The plaintiff had no prior knowledge of a working relationship, nor the existence of this company. This name is not on any of the employee contracts.

**Plaintiff has never stopped being an employee**.

If he was an employee on April 17th, 2016; then, he was also an employee on June 29th, 2018. His employment was not terminated when he was on suspension, but his employer was Greater Houston Transportation Company and Metropolitan Transit Authority of Harris County, Texas. It is not customary, nor has it ever been entered into law in any jurisdiction, where a person's employment status fluctuates with the assignment.

He was still an employee on suspension; when he was working at the private section of the company, and at the time of the accident on June 29th, 2018. There has never been a formal termination of the plaintiff's employment, even to this day. They only did not call him back from off suspension, which of course, could be tantamount to termination, in essence.

**Texas Division of Workers Compensation found** that the plaintiff was, on April 17th, 2016 an employee of the company, Texas Taxi, Inc., but an Independent contractor of the same company on June 29th, 2018. This finding is also in dispute because the plaintiff was never employed by this company. The employee was Greater Houston Transportation Company and Metropolitan

Transit Authority of Harris County Texas. The plaintiff was not aware of the existence of the company Texas Taxi, Inc, until after he had filed for workers compensation and got to the first hearing. This company name in not listed on the employee agreement nor any other paperwork received from the company.

**The Effort to Terminate Plaintiff's Employment**

**The company's mechanic would fix the vehicle to release antifreeze** on to the engine block, and poke holes in the cavity of the body of the vehicle to transport the fumes and toxin into the cab, that after heated up and a few minutes of driving, will make the driver sleepy and after several complaint to the company about this, the claimant was ignored until he was called to the office again, because there was another complaint. This time somebody called in to say that the claimant was always putting the vehicle in park at the traffic light.

**The safety of the plaintiff was placed last by the defendant**. When the plaintiff got to the office, he explained how the vehicle, in disrepair, is leaking fluids and causing him to be drowsy; especially when he stops at the traffic light. So, this was a safety measure, to prevent him from dosing off and the vehicle rolling out into passing traffic, but the claimant was warned not to do it again, because the passenger did not like it. The claimant would think that the company would be more interested in the safety of its drivers than what the passenger likes, but not in this case. He was told to stop putting the vehicle in park at the light.

**All these were pretexts to force the plaintiff to quit his job,** because they had somebody else waiting while they were doing this to be assigned to it, and she was there every day at the office waiting for the news when he would not

be coming back to work. The plaintiff's main job was to transport Metro's clients to Dialysis, some of whom are terminal.

**The plaintiff found out that company employees were the ones** calling in some of the complaints, and other times incentivizing clients to do so. The plaintiff recognizes their voices, and the frequent use of company's internal jargons indicates that some 'clients' who were making these complaints were company employees. It was all a part of the operation to force the claimant out of his job. The entire ordeal was punctuated with one question, as though it was code to let the plaintiff know what this was about. The question? **Where you from**?

**Since this started the claimant was asked** this question by seems like by every passenger he encountered, and even while waiting at the office. It was obvious, by the sarcasm and gesture, that they did not really want to know, but was basically telling the plaintiff that he was not from the United States. The claimant has been with this company for about twenty years, but has been asked this question in three months, since we got the new contract, more times than all prior years combined. It was clear what they were trying to say and do, and what they were trying to communicate in this manner, to the plaintiff(s).

**The defendant wrongfully and unlawfully terminated the plaintiff's employment, effectively.** The next time he was called to the office, he was told that a client called again to say that the plaintiff was dozing off at the traffic light. They had not repaired the vehicle, and about a day or two before when the plaintiff took it to the company to have it exchanged, he was told that they did not have any vehicle available, but if he did not want to drive it, they had somebody else who

will. They did not use those exact words, but that was the understanding, that if I did not complete the route, they would have to get somebody else to assign to it, and the plaintiff knew exactly what that meant. This happened on or about September 2nd, 2017.

**At this meeting, the plaintiff was told that he would be suspended** for three months. Hurricane Harvey came and at three months we were mostly in shelters all around the City and State. When the claimant could, he went back to the defendant and he was told that because of the hurricane, not much work was being done now. He would be called within a year's time. This did not sound right, because Dialysis clients must get Dialysis, but he had no choice. There was another area of the company where those drivers do not get paid as much and the claimant was assigned to there until hiring start in his department again.

Now, at around a year the plaintiff was thinking that it is time to go back to his job, when on June 29th, 2018 out of the blue, he was driving on FM1960 and got rear-ended by a motorist, and his vehicle was totaled in the wreck. He does not believe this was coincidence.

**The company has been using microchip** that was implanted in the plaintiff's body at some point; by another of their company that the plaintiff may have worked for in the past, as a type of dog training tool to shock him remotely from a mobile device. The implant has shown up on x-ray as located in a left rib of the plaintiff's left side, and was discovered about a year before the incident, but has never shocked the plaintiff before until about a couple months after we received the new contract and they started trying to push the plaintiff out of his

job. Copy of the x-ray was submitted as part of the claimant's Workers Comp Claim.

**The plaintiff was an employee on or around April 17Th, 2016** when he had two teeth broken in his gum while at work in the vehicle asleep. Then, there was a hole drilled in a third, in January 2019 that resulted in constant ringing in the hear that has gone on to this day. However, when he tried to file for Workers Compensation, he was told that he was not an employee and could not. So, he was denied all medical benefits and the insurance company, after authorizing medical treatment, called the doctor and cancelled the appointments.

However, the Division of Workers Compensation found in a January 19Th 2021 decision, that on April 17Th 2016 the plaintiff was in fact an employee and not an independent contractor as he was classified by the employer.

**Because the plaintiff was misclassified as an independent contractor,** he was denied all employee benefit and overtime pay, and charged roughly $60,000 a year for utilizing the company's equipment, a charge that those properly classified does not incur.

**The defendant divided the workforce into two segregated groups:** the one of mostly female American citizens as employees and the other, of mostly male immigrants as independent contractors, but both groups do the same exact duties.

**The Requests of the Plaintiff**

The plaintiff brought this action alleging employment discrimination based on national origin, and requesting also that the District Court review the decision of the Administrative Law Judge of the Texas Division of Workers Compensation for errors made while deciding if the plaintiff was entitled to Workers Compensation;

1) Affirm the ALJ finding that Plaintiff was an employee of the defendant(s); Greater Houston Transportation Company and Metropolitan Transit Authority of Harris County, Texas, on or around April 17th, 2016,

2) Affirm the Appeals Panel finding that Plaintiff properly and timely notified the employer of the accident and injuries he sustained on June 28th, 2018.

3) Affirm the ALJ finding that Plaintiff was injured in an accident of 6/29/2018.

4) Determine the plaintiff's right to employee benefit starting on the date of hire; including but not limited to Workers Compensation Coverage and overtime pay.

5) Assessed penalty against the insurer, for untimely challenging the plaintiff's claim for compensation, and failure to provide access to medical care, as provide for by Texas Labor Laws, and agreed with the employer, to withhold evidence.

Also, 6) determine the plaintiff(s) right to compensation for injury sustained, while defendant(s) was discriminating against him and attempting to relieve him of his employment. This to include the accident of June 29th, 2018, as part of the effort, and is amongst several other tactic and strategies that the defendant has employed against the plaintiff between April 17$^{ths}$ 2016 through January of 2019, as ongoing continuous traumatic events.

These events included electric shock waves sent through the plaintiff's body, as you would with a dog training device, via illegally implanted microchip previously inserted in a rib of his left side, without the informed consent of the plaintiff. These shocks started around the end of April 2016 and continue through January of 2019, and intermittent times thereafter.

**Finally**, according to Internal Revenue Service Guidelines, cab drivers are employees of the cab company, and this is especially true, if the company owns the vehicles, which in this case, it clearly does. That in of itself shows proof of control.

. **Wherefore,** Plaintiff request of the court, an order awarding damages in his favor for employment discrimination; including but not limited to award for workers compensation, retroactive employee benefits, overtime pay, moneys that was charged to the plaintiff because of the misclassification of his employee status, and damages for the time he has been suspended from his employment. Plus, any other award the court may determine is just and proper; including but not limited to injunctive relief.

**(Additional pleadings and evidence are forthcoming)**

UNITED STATES DISTRICT COURT

For the

Southern District of Texas

Walter Moore

      Vs.                                  Civil Action No:

Greater Houston Transportation Company and

Metropolitan Transit Authority of Harris County, Texas

### COMPLAINT IN CIVIL ACTION

Name: _____ Before me personally paper this:

Sign: _____ Date: _____

Notary: _____

Expiration: _____

Signature: _____

From:      Walter Moore (Plaintiff(s)

            P.O. Box 2287

            Sugar Land Texas 77487-2287

**To:**        **Law Office of Jeffery Cunningham (Attorney for Defendant)**

              100 Commons Road

              Suite 7-418

              Dripping Springs, Texas 78620-4400